## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHELLE KAVANAGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-3346 |
| | ) | |
| C.D.S. OFFICE SYSTEMS | ) | |
| INCORPORATED, D/B/A CDS | ) | |
| OFFICE TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on Defendant C.D.S. Office Systems Incorporated, D/B/A CDS Office Technologies, Inc.'s Motion to Dismiss (d/e 5) Counts I and II of Plaintiff Michelle Kavanagh's Complaint. Defendant's Motion is DENIED. Plaintiff has pleaded facts that permit a reasonable inference that Plaintiff engaged in activity protected by the Fair Labor Standards Act. Furthermore, Plaintiff's allegations that Defendant discharged her for reporting Defendant's illegal conduct to a supervisor support Plaintiff's claim for Illinois common law retaliatory

discharge.

## I. <u>FACTUAL BACKGROUND</u>

The Complaint contains the following allegations.  From February 22, 2010 through July 3, 2012, Plaintiff worked as the Human Resource Director for Defendant.  Mr. Bruce Egolf, Defendant's Chief Financial Officer, acted as Plaintiff's direct supervisor during Plaintiff's term of employment.  As a supervisor, Mr. Egolf reported directly to officers and directors of the company, including Jerome Watson and Mark Watson. Jerome Watson made all hiring and firing decisions and was responsible for Defendant's policy regarding overtime wages.

On June 1, 2012, Plaintiff met with Defendant's IT Manager to discuss complaints directed to the IT Manager by Bob Goldesberry and Dakota Kennedy, two of Defendant's IT Technicians.  The technicians had complained to the IT Manager about their classification pursuant to the Fair Labor Standards Act as exempt from overtime pay.

After hearing about the technicians' complaints, Plaintiff began researching how the Fair Labor Standards Act applied to the two

technicians whose duties included installing customer work stations and

servers.  After spending five days gathering information about the

overtime classification issue, Plaintiff, as Human Resource Director,

formed the opinion that Bob Goldesberry and Dakota Kennedy were not

exempt from overtime pay under the Fair Labor Standards Act.

On June 6, 2012, at 2:56 p.m., Plaintiff sent an e-mail to her

supervisor, Mr. Egolf, advising him of the technicians' complaints.  In the

e-mail, Plaintiff included information about the complaints and about

Plaintiff's meeting with Defendant's IT Manager.  Plaintiff also included

applicable provisions of the Fair Labor Standards Act, information on the

possible penalties Defendant faced for failure to address the technicians'

complaints, a recommendation that Defendant perform an audit of all

employees to ensure that each was properly classified under the Fair

Labor Standards Act, and information on the proper method for tracking

hours worked by employees who should receive overtime wages.  On June

6, 2012 at 3:52 p.m., Mr. Egolf acknowledged receipt of this email and

responded that he needed some time to digest the information before

meeting with Plaintiff.

On June 13, 2012, Plaintiff had yet to hear back from Mr. Egolf. Therefore, Plaintiff sent Mr. Egolf another email on June 13, 2012 at 5:14 p.m. requesting a meeting.  Mr. Egolf responded at 8:54 p.m. agreeing that he and Plaintiff needed to meet and that Mr. Egolf would check his Friday schedule.  On June 14, 2012 at 6:14 a.m., Plaintiff received an email from Mr. Egolf stating he hoped to speak with Plaintiff about the employee complaints on Friday, June 15, 2012.

At about 3:00 p.m. on June 15, 2012, Mr. Egolf asked Plaintiff to meet with him regarding the complaints.  Mr. Egolf brought to the meeting the information Plaintiff had emailed to Mr. Egolf on June 6, 2012.  Mr. Egolf's first question was why Defendant's IT Manager had approached Plaintiff about overtime classification under the Fair Labor Standards Act.  Plaintiff replied that the IT Manager brought the Complaints to Plaintiff's attention because Plaintiff was the Human Resource Director.  Mr. Egolf then asked why Bob Goldesberry and Dakota Kennedy should not be classified as exempt from overtime pay

under the Fair Labor Standards Act.  Plaintiff referred Mr. Egolf to the
information Plaintiff had emailed to Mr. Egolf and summarized how the
Fair Labor Standards Act classifies computer professionals.  Mr. Egolf
said that Bob Goldesberry likes to stir up trouble so Mr. Egolf was not
surprised that Bob Goldesberry had complained.  However, Mr. Egolf
was surprised that Dakota Kennedy had complained because Dakota
Kennedy is the step-grandson of Jerome Watson, one of Defendant's
directors.  Mr. Egolf told Plaintiff that Mr. Egolf needed to speak with
Kelly Kennedy, Jerome Watson's daughter and Dakota Kennedy's step-
mother, to see if she could stop Dakota Kennedy's complaints.  Mr. Egolf
then said that he thought Dakota Kennedy complained at the urging of
Bob Goldesberry.

After these comments, Mr. Egolf asked Plaintiff how to make the
Fair Labor Standards Act issues "go away."  Complaint, d/e 1 at ¶ 10
("How can we make this go away?").  Plaintiff said that she could not
just make a violation of the Fair Labor Standards Act "go away."
Complaint, d/e 1 at ¶ 10 ("Bruce, we can't make this go away, the law is

what the law is and as an employer we have to follow it."). Mr. Egolf told Plaintiff that she needed to make the issue "go away." Complaint, d/e 1 at ¶ 10 ("I need for you to make this go away."). Plaintiff again said she would not.

Plaintiff proceeded to tell Mr. Egolf that Defendant had incorrectly classified other employees in addition to Kennedy and Goldesberry. Mr. Egolf asked Plaintiff who else had been classified incorrectly. Plaintiff gave Mr. Egolf the example of service technicians and told Mr. Egolf that half of the technicians were classified as exempt from overtime pay, and the other half were classified as non-exempt, meaning they receive overtime pay. Mr. Egolf told Plaintiff to make them all exempt. Plaintiff explained that under Fair Labor Standards Act one cannot simply list a position under whichever classification one wants. Plaintiff advised Mr. Egolf that Defendant must look at the job duties and responsibilities of an employee before classifying the employee for Fair Labor Standards Act purposes. Plaintiff further explained that the technicians did not fall within the classification for exempt employees and, therefore, all service

technicians should be classified as non-exempt.

During the same June 15, 2012 meeting, Plaintiff also told Mr.
Egolf that Defendant was not compliant with Fair Labor Standards Act
recording requirements for non-exempt staff because Defendant had not
tracked all of the non-exempt employees' daily hours worked.  Mr. Egolf
asked Plaintiff how Defendant could track the service technicians' daily
hours if the technicians were not exempt.  Plaintiff advised Mr. Egolf that
Defendant could implement time clocks, require technicians to fill out
electronic timesheets, or assign an administrator to track the technicians'
time with a Global Positioning System.  Plaintiff then suggested
conducting a full audit of all employee positions to make sure each was
classified correctly under the Fair Labor Standards Act.  Mr. Egolf agreed
that Plaintiff should conduct an audit and complete a report of her
findings.

Plaintiff told Mr. Egolf that the audit would be much easier and
smoother if the employees had job descriptions.  Mr. Egolf agreed but
noted that employee job descriptions were improbable until Jerome

Watson retires and Mark Watson, his son, takes over.  Plaintiff asked

why this was the case, and Mr. Egolf explained that Jerome Watson

thinks that job descriptions result in employees not working above and

beyond the tasks listed in the description.

Plaintiff then asked Mr. Egolf if Mark Watson felt the same way

about performance reviews as Jerome Watson.  When Mr. Egolf asked

what Plaintiff was talking about, Plaintiff responded that Mr. Egolf had

told Plaintiff that Jerome Watson does not authorize performance

reviews because reviews give employees an expectation of a raise.  Mr.

Egolf answered that he did not know how Mark Watson felt about

performance reviews.  Plaintiff told Mr. Egolf that employees want

reviews to find out how they are doing.  Plaintiff elaborated by saying

that she does not even know what she is supposed to be doing most of

the time because she has no job description and nobody communicates

with her.  Mr. Egolf told Plaintiff that she just needed to "stay safe."

Complaint, d/e 1 at ¶ 12.

After her meeting with Mr. Egolf, Plaintiff performed the audit that

she and Mr. Egolf had discussed.  At approximately 1:30 p.m. on June 26, 2012, Plaintiff left the results of her Fair Labor Standards Act audit in Mr. Egolf's chair for his review.  Mr. Egolf did not acknowledge receipt of the Fair Labor Standards Act information compiled by Plaintiff.

At 4:42 p.m. on June 27, 2012, Plaintiff sent Mr. Egolf an email letting him know that Plaintiff had reviewed four other IT technicians' job duties and responsibilities and concluded that these technicians should also be classified as non-exempt.  In the email, Plaintiff also suggested that Defendant contact an attorney for advice on Fair Labor Standards Act classification issues.

On June 28, 2012 at 7:12 a.m., Mr. Egolf acknowledged the previous day's email by telling Plaintiff that her report on the audit was helpful.  Mr. Egolf also told Plaintiff that he intended to take the matter to Jerome Watson, Mark Watson, and Defendant's attorney.  Plaintiff was never asked to nor did she meet with Jerome Watson, Mark Watson, or Defendant's attorney regarding the info in her report.

On Thursday, June 28, 2012 at 4:15 p.m., Plaintiff sent Mr. Egolf

an email containing the job duty descriptions of the four IT technicians referenced in Plaintiff's June 27, 2012 email.  Plaintiff sent this email because she believed that Defendant's attorney needed job descriptions to review Plaintiff's audit report.

On July 3, 2012 at approximately 1:30 p.m., Defendant terminated Plaintiff's employment.  The stated reason for Plaintiff dismissal was reduction in force/job consolidation.  Before leaving Defendant's premises, Plaintiff took copies of the information and emails discussed in the fact Section of this Opinion.

## II.  <u>PROCEDURAL BACKGROUND</u>

On December 14, 2012, Plaintiff filed a three-count Complaint. Count I is a claim for retaliatory discharge pursuant to the Fair Labor Standards Act.  Count II is a retaliatory discharge claim under Illinois common law.  Count III is a violation of the Illinois Whistleblower Act.

On January 2, 2013, Defendant filed a Motion to Dismiss Counts I and II of the Complaint.  Plaintiff filed her Response to the Motion on January 22, 2013.  Defendant has since filed a Reply to the Response,

and Plaintiff has filed a Surreply.

## III.   JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over Count I of the Complaint because a district court has jurisdiction over claims brought pursuant to the Fair Labor Standards Act.  See 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction . . . .").  The Court also has subject-matter jurisdiction because the cause of action arises under the laws of the United States.  28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's state law claims in Counts II and III because those claims arise out of the same transaction or series of transactions as Plaintiff's claim in Count I.  28 U.S.C. § 1367.  Venue is proper in this Court because the actions giving rise to the claims at issue took place in this judicial district and because the Court has personal jurisdiction over Defendant.  28 U.S.C. § 1391.

## IV.   LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor.  Id.  However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient.  Id.

# V.   <u>ANALYSIS</u>

In the Motion to Dismiss, Defendant argues that Plaintiff's claim in Count I should be dismissed because Plaintiff has not alleged facts that show Plaintiff filed a complaint for purposes of bringing an antiretaliation lawsuit under the Fair Labor Standards Act.  Defendant then argues that Plaintiff's claim in Count II for Illinois common law retaliatory discharge should be dismissed because Plaintiff does not allege a violation of a clear mandate of public policy and because an adequate remedy already exists under the Fair Labor Standards Act for Plaintiff's alleged harms.

## A.   Plaintiff Has Pleaded Allegations that Permit a Reasonable Inference that Defendant Understood that Plaintiff Had Complained About and Taken a Position Adverse to Defendant Regarding Defendant's Wage and Hour Practices

Defendant argues that Plaintiff has failed to state a claim for relief in Count I because Plaintiff has not alleged facts that establish she filed a complaint pursuant to the Fair Labor Standards Act.  The Fair Labor Standards Act's antiretaliation provision provides that an employer may not discharge any employee because the employee has filed any

Page 13 of 29

complaint or instituted any proceeding under the Fair Labor Standards Act.  29 U.S.C. § 215(a)(3) (An employer may not "discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under" the Fair Labor Standards Act.).  The term complaint is construed broadly and includes oral complaints made by an employee to her supervisor.  See Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1336 (2011) (holding that oral complaints fall within the scope of the phrase "filed any complaint" in the Fair Labor Standard Acts antiretaliation provision.).

The Seventh Circuit has not addressed the exact parameters of what constitutes a "complaint."  However, the Supreme Court has stated that a complaint under the Act must give the employer fair notice that a grievance has been lodged.  See id. ("To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute

and a call for their protection.").  Additionally, the First, Fifth, and Tenth Circuit Courts of Appeals have held that, for an employer to understand that an employee has lodged a complaint and stands adverse to the employer, an employee must cross the line from merely performing her job duties to clearly lodging a personal complaint about the wage and hour practices of her employer.  This is referred to as the crossing-the-line standard.  See Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 629 (5th Cir. 2008) (determining that field manager who asked Human Resources Manager to answer technicians' unspecified legal questions about the employer's wage and hour practices was acting in role of manager in passing along the questions and so did not engage in protected activity under Section 215(a)(3)); Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 103 (1st Cir. 2004) (finding that the plaintiff did not assert rights adverse to the defendant where the plaintiff informed the defendant about potential overtime violations, and did so in furtherance of his job responsibilities); McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486-87 (10th Cir. 1996) (finding that the plaintiff

Page 15 of 29

who reported wage and hour issues to company attorney had acted within the scope of her duties as Personnel Director and, therefore, did not take a position adverse to her employer or assert any rights under the Fair Labor Standards Act that supported her claim for retaliatory termination).  Without formally adopting the crossing-the-line standard employed by the First, Fifth, and Tenth Circuits, this Court recognizes that an employee's duties and scope of employment may be important, if not dispositive, for determining whether the employer understood that the employee lodged a complaint that could give rise to a Fair Labor Standards Act antiretaliation claim.

Here, Plaintiff has alleged that she was Defendant's Human Resource Director.  Defendant contends that by pleading she was Defendant's Human Resource Director, Plaintiff has established that Plaintiff was acting within the scope of her employment when Plaintiff conveyed information regarding Fair Labor Standards Act overtime classification and time reporting requirements to her supervisor, Mr. Egolf.  Defendant asserts that Defendant had no fair notice that Plaintiff

had lodged a Fair Labor Standards Act complaint because any
information conveyed to Mr. Egolf occurred during the performance of
Plaintiff's duties as Human Resource Director.

However, Plaintiff's allegation that she was employed as
Defendant's Human Resource Director does not clearly establish that she
acted within the scope of her duties when she approached Mr. Egolf
about Defendant's non-compliance with the Fair Labor Standards Act.
Specifically, Plaintiff alleges that Defendant did not provide employees
with job descriptions or duties.  Plaintiff also alleges that when she told
Mr. Egolf about the misclassification issues, Mr. Egolf asked why anyone
had complained to Plaintiff about improper classification under the Fair
Labor Standards Act.  These allegations permit a reasonable inference
that Plaintiff was not acting within the scope of her job duties when she
researched Fair Labor Standards Act compliance issues and notified Mr.
Egolf about Defendant's employee classification and time reporting
problems.

Furthermore, Plaintiff alleges that, after telling her supervisor Mr.

Egolf about the compliance issues, Mr. Egolf told Plaintiff to get rid of the problems.  Plaintiff opposed this idea, telling Mr. Egolf that Defendant must follow the law.  Following this conversation, and with Mr. Egolf's approval, Plaintiff audited Defendant's classification of other employees and prepared a report on her findings.  In the report, Plaintiff determined that Defendant had misclassified additional employees as exempt from overtime wages.  Plaintiff submitted her findings to her supervisor, Mr. Egolf, on Wednesday, June 27, 2013.  Mr. Egolf acknowledged receipt of the audit results a day later, but Plaintiff never received a response from Defendant's directors Mark Watson and Jerome Watson or Defendant's attorney.  Less than one week later on Tuesday, July 3, 2012, Defendant terminated Plaintiff's employment.

Plaintiff's allegations permit a reasonable inference that she asserted rights protected by the Fair Labor Standards Act on behalf of Defendant's IT technicians when she told her supervisor that the IT technicians should receive overtime wages.[1]  Plaintiff's allegations also

---

[1] Plaintiff was not asserting rights under the Fair Labor Standards Act on her own behalf when she spoke with Mr. Egolf about Defendant's classification of workers for

permit a reasonable inference that Plaintiff put herself in a position

Defendant perceived as adverse when Plaintiff refused to make the

problem "go away."  Based on these allegations, Defendant had notice

that terminating Plaintiff only a short time later could give rise to this

antiretaliation lawsuit under the Fair Labor Standards Act.  Accordingly,

Defendant has stated a plausible claim for relief pursuant to the Fair

Labor Standards Act's antiretaliation provision.

---

Fair Labor Standards Act purposes.  Neither the Seventh Circuit nor the Supreme Court has spoken to whether an individual that asserts the rights of another has standing to sue under the antiretaliation provision of the Fair Labor Standards Act. See Reed v. Monahan's Landscape Co., Inc., 2004 WL 422686, at *3 (N.D. Ill. 2004) (declining to dismiss complaint based on the defendant's argument that the plaintiff could not bring a Fair Labor Standards Act retaliation claim after asserting rights under the Act on behalf of other employees and explaining that the Seventh Circuit should have an opportunity to address this argument on a fully developed record).  However, other courts seem to accept that this type of action is permissible. See, e.g., McKenzie, 94 F.3d at 1486 n.8 (assuming without deciding that the Fair Labor Standards Act's antiretaliation provision protects actions taken by an employee on behalf of other employees).  Also, in explaining the legislative history of the Fair Labor Standards Act, the Supreme Court has provided strong language about how the statute should be construed broadly because the idea is to encourage reports about improper employer conduct.  See Kasten, 131 S.Ct. at 1333 (explaining that the Fair Labor Standards Act seeks to prohibit labor conditions detrimental to the well-being of workers and that the antiretaliation provision makes the enforcement of the Act effective by preventing fear of economic retaliation from inducing workers to quietly accept substandard conditions).  Lastly, Defendant has not raised this issue as a reason why Plaintiff has failed to state a claim upon which relief can be granted.

B.   **Plaintiff Has Stated a Claim for Common Law Retaliatory Discharge Under Illinois Law Based on Plaintiff's Allegations that She Reported Defendant's Non-Compliance with the Fair Labor Standards Act to Her Supervisor**

Defendant also argues that Count II of Plaintiff's Complaint should be dismissed because Plaintiff fails to state a claim for Illinois common law retaliatory discharge.  In Illinois, an employee may sue her employer for common law retaliatory discharge if the discharge was in retaliation for certain actions that are protected by Illinois public policy.  The Supreme Court of Illinois has identified two situations in which a clear mandate of public policy exists thereby supporting a claim for common law retaliatory discharge.  One is where an employee is fired for asserting a workers' compensation claim.  Kelsay v. Motorola, Inc., 384 N.E.2d 353, 357-59 (Ill. 1978).  The other is an employer firing an employee for refusing to engage in illegal conduct or reporting the illegal conduct of others.  Palmateer v. Int'l Harvester Co., 421 N.E.2d 876, 879 (Ill. 1981) (finding that the plaintiff could bring a cause of action for retaliatory discharge based on allegations that his employer discharged him for reporting violations of the Illinois Criminal Code).

Page 20 of 29

1.    **Plaintiff Reported Defendant's Alleged Violation of a Federal Law that Advances the General Welfare of Illinois Citizens**

Regarding the latter situation, allegations of a good faith report of an employer's conduct that violates federal law will support a claim for common law retaliatory discharge if the federal law at issue furthers the general welfare of Illinois citizens.  Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd., 277 F.3d 936, 942 (7th Cir. 2002) ("[I]t is a clearly established policy of Illinois to prevent its citizens from violating federal law[,] and the state's public policy encourages employees to report suspected violations of federal law if that law advances the general welfare of Illinois citizens.").  To state a claim for retaliatory discharge, a plaintiff need only allege that she reported the illegal conduct to her supervisor.  Lanning v. Morris Mobile Meals, Inc., 720 N.E.2d 1128, 1129 (Ill. App. 1999) (permitting common law retaliatory discharge action where the plaintiff complained to her supervisor and a dietician that the employer's food handling practices were endangering the health of customers).

In this case, Plaintiff's allegations that she reported Defendant's

violation of the Fair Labor Standards Act to her supervisor implicate a

clear mandate of Illinois public policy.  By establishing wage, hour, and

overtime standards, the Fair Labor Standards Act seeks to prevent labor

conditions detrimental to the maintenance of the minimum standard of

living necessary for the health, efficiency, and general well-being of

workers.  See 29 U.S.C. § 202.  The public policy of promoting the

general welfare of workers by complying with the standards set for in the

Fair Labor Standards Act is addressed in the penalty provision of the

statute which provides for fines and imprisonment for willful violations

of the Act:

> Any person who willfully violates any of the provisions of
> section 215 of this title shall upon conviction thereof be
> subject to a fine of not more than $10,000, or to
> imprisonment for not more than six months, or both.  No
> person shall be imprisoned under this subsection except for an
> offense committed after the conviction of such person for a
> prior offense under this subsection.

29 U.S.C. § 216.  These penalties for willful violation of the Fair Labor

Standards Act demonstrate Congress's intent to enforce the Act's clearly

mandated public policy of furthering the well-being of workers

throughout the United States and in Illinois.  Accordingly, Plaintiff has

stated a claim for common law retaliatory discharge by alleging that

Defendant discharged Plaintiff after she reported Defendant's unlawful

conduct under the Fair Labor Standards Act.

> 2.  **The Antiretaliation Provision of the Fair Labor Standards Act Does Not Provide Plaintiff with a Remedy that Requires this Court to Reject Plaintiff's Common Law Retaliatory Discharge Claim**

Defendant argues that, even if Plaintiff has a retaliatory discharge

claim because she reported Defendant's alleged violation of federal law,

Plaintiff's Count II must be dismissed because the Fair Labor Standards

Act already provides a remedy for unlawful discharge and imposes

penalties that protect the public policy of ensuring the well-being of

workers.  Defendant contends that this Court must reject Plaintiff's

common law retaliatory discharge claim because the Fair Labor Standards

Act provides these other remedies and protections.

Illinois courts have hinted that a retaliatory discharge claim may be

rejected if an adequate alternative remedy exists to vindicate the

retaliatory discharge or otherwise deter the employer from acting

contrary to public policy.  Brandon, 277 F.3d at 943 (citing Stebbings v. Univ. of Chicago, 726 N.E.2d 1136, 1141 (Ill. App. 2000)).  The Seventh Circuit has explained, however, that the potential for an alternative remedy under federal law does not automatically foreclose stating a claim for retaliatory discharge under Illinois law.  Id. at 945.

In Brandon v. Anesthesia & Pain Management Associates, the Seventh Circuit has addressed the issue of when an alternative remedy under federal law forecloses a common law retaliatory discharge claim.  In this case, the plaintiff was employed as an anesthesiologist by the defendant medical facility in Belleville, Illinois.  Id. at 938.  After discovering that some of the defendant medical facility's doctors had seemingly falsified bills submitted to Medicare, the plaintiff raised his concerns with the shareholder doctors.  Id. at 939.  The plaintiff's reports to other shareholders ended with the plaintiff being terminated from his position.  Id. at 940.

Following his discharge, the plaintiff, a Missouri resident, reported the seemingly unlawful billing practices to the United States Attorney's

Office and filed a diversity action against the defendant medical facility

and the facility's shareholders, alleging retaliatory discharge under Illinois

law.  Id.  The case went to trial, and the jury returned a verdict for the

plaintiff awarding him $2,034,000.  Id.  However, six months after the

verdict, the district court granted the defendants' motion for judgment as

a matter of law, vacated the verdict, and dismissed the plaintiff's

complaint.  Id.  The district court reasoned that the plaintiff had failed to

establish that his claim implicated an important public policy and that an

alternative remedy existed under the False Claims Act.  Id. at 941, 943.

Based on this reasoning, the district court rejected the plaintiff's

retaliatory discharge claim.  Id.

On appeal, the Seventh Circuit Court of Appeals disagreed with the

district court's holding and explained that the potential for a remedy

under the False Claims Act did not prevent the plaintiff from bringing his

common law retaliatory discharge claim.  Id. at 945.  The Seventh Circuit

explained that, under the False Claims Act, a plaintiff must show that her

actions were taken in furtherance of a False Claims Act enforcement

action, that the employer had knowledge that the plaintiff had engaged

in this protected conduct, and that the discharge was motivated, at least

in part, by the protected conduct.  Id. at 944.

The court questioned what the plaintiff in Brandon had done to

put the defendants on notice of the plaintiff's intent to pursue a fraud

action under the False Claims Act.  Id. at 944-45.  The court noted that

the plaintiff had contacted Medicare for information about billing rules

and told the shareholder doctors about his concerns.  Id.  However, the

plaintiff did not contact authorities until after his discharge.  Id.  The

court explained that the plaintiff's actions were less like an individual

who put the defendants on notice that he intended to pursue a fraud

action and more like a plaintiff who performed actions within the scope

of his employment.  Id. at 945.  Without notice to the employer that the

plaintiff intended to or had already commenced a case under the False

Claims Act, the plaintiff could not have a claim under the False Claims

Act's antiretaliation provision.  Id.

The Seventh Circuit further explained that, unlike a claim under

the False Claims Act, a common law retaliatory discharge claim requires a report about an employer's illegal conduct and discharge of the employee following the report.  Id. at 940-41.  Such a report can be an oral communication to an individual within the company.  Id.  Because the False Claims Act required action by the plaintiff that differed from the conduct required to state a claim for common law retaliatory discharge, the Seventh Circuit held that the plaintiff remained free to pursue his common law retaliatory discharge claim.  Id. at 945.

Similarly, in this case, the elements needed to establish an antiretaliation claim under the Fair Labor Standards Act differ from those needed to establish a claim for common law retaliatory discharge under Illinois law.  An antiretaliation claim under the Fair Labor Standards Act requires the employee to establish that the employee has filed a complaint that puts the employer on notice that the employee has taken a position adverse to the employer with regard to rights protected by the Fair Labor Standards Act.  Alternatively, a common law retaliatory discharge claim based on reports of an employer's unlawful conduct

Page 27 of 29

under federal law does not require the employee to establish that the employee has taken a position adverse to the employer with regard to the rights protected by the law at issue.  Instead, a plaintiff may state a common law claim for retaliatory discharge if the employer discharges the employee for reporting to someone within the company a federal law violation if the federal law at issue furthers the general welfare of Illinois citizens.

In sum, the facts in this case may or may not establish that Plaintiff has a Fair Labor Standards Act antiretaliation claim.  However, even if Plaintiff does not have a Fair Labor Standards Act antiretaliation claim, Plaintiff may still have a claim for common law retaliatory discharge under Illinois law.  Because this is the case, Plaintiff may proceed on both claims for relief.

## VI.   <u>CONCLUSION</u>

Defendant's Motion to Dismiss (d/e 5) is DENIED.  The case is referred to Magistrate Judge Cudmore for further pretrial proceedings. IT IS SO ORDERED.

ENTER: January 3, 2014

FOR THE COURT:                      <u>s/ Sue E. Myerscough</u>
                                            SUE E. MYERSCOUGH
                                            UNITED STATES DISTRICT JUDGE